(36 Misc. Rep. 628.)

JOHNSON et al. v. WEED-PARSONS PRINTING CO.

(Supreme Court, Appellate Term.    December, 1901.)

CONTRACT—CONSTRUCTION.

> Plaintiffs had entered into an agreement with defendants for the printing and binding of a book. Thereafter, desiring to repossess themselves of the plates, they contracted with defendants that they should turn over the plates and sheet stock, provided plaintiffs would pay to them their profits for the binding of the books, "namely, 20 cents a copy." *Held*, that the word "copy" did not mean a single volume of the work, but a reproduction of the whole, without regard to the number of volumes.

Appeal from municipal court, borough of Manhattan, Tenth district.

Action by Charles F. Johnson and others against the Weed-Parsons Printing Company. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before McADAM, P. J., and SCOTT and MacLEAN, JJ.

Henry J. Robert, for appellants.

Samuel H. Wandell, for respondent.

SCOTT, J. The facts are undisputed. The plaintiffs are the publishers of a book known as "Animal Kingdom, or Johnson's Household Book of Nature," which was once published in a single volume, but for some years past has been published in two volumes. As publishers they were the owners of the electrotype plates and illustrations. In 1897 they entered into an agreement with the defendant for the printing and binding of the book, and the plates and illustrations were delivered to the defendant, and an agreement made between the plaintiffs and the defendant relating to the advancing of certain moneys, and the repayment thereof, and the possession of the electrotype plates pending such repayment. In April last the plaintiffs, desiring to repossess themselves of the

plates, entered into negotiations with the defendant. A conference was had between the plaintiff Johnson and one Manning, the president of the defendant, in which reference was made to unbound printed sheets of the work, known as "sheet stock," which the defendant had on hand, but the exact amount of which was then apparently unknown to either conferee. The defendant, through its president, soon thereafter made in writing a definite proposition to the plaintiffs as follows: "We therefore make you this proposition: to turn the plates and sheet stock over to you, provided you pay us what would be our profit in binding the books, namely, 20 cents a copy. There are 1,405 of them." This proposition was accepted by the plaintiffs, and the defendant thereupon sent forward the plates, and a draft for $280, which the plaintiffs paid. Upon examination of the sheet stock sent them the plaintiffs discovered that they had received unbound sheets for 680 complete works, and made demand upon the defendant for a return of a proportional part of the money paid. The controversy turns upon the meaning of the word "copy" as used in the proposition for sale of the stock sheets, the plaintiffs contending that it meant one full set of the publication, and the defendant insisting that it was used as the equivalent of "volume," so that for each complete copy of the work, consisting of two volumes, it was entitled to receive 40 cents. In ordinary parlance the word "copy" means, not a reproduction of only a portion of the thing copied, but of the whole of it. The Century Dictionary defines the word as follows: "A completed reproduction, or one of a set or number of reproductions, containing the same matter or having the same form or appearance." Webster's Dictionary gives the following definition: "(1) A writing like another writing, a transcript from an original; hence (2) any single book or sets of books containing a composition resembling the original work, as the copy of a deed, or of a bond, a copy of Addison's works," etc. The Standard Dictionary defines copy as "a single book or sets of books, or a sheet reproducing any literary composition; as a fully illustrated copy of Dante's Inferno," etc. If the proposition is to be construed according to the plain and customary meaning of the word "copy," there can be no doubt that it called for the payment of 20 cents as profit on the binding of each complete copy or reproduction of the work; that is, for each two volumes into which the work, for purposes of publication, was divided. Notwithstanding such division it still remained one book, whether divided, for trade purposes, into two or even more volumes. The evidence of experts in the book trade does not require that the word copy be given any restricted sense. Many of them testified that the word "copy" was used with respect to a single book or volume. It may well be that their evidence is not so irreconcilable as at first sight it appears. It is easy to understand that a bookseller, speaking of a complete edition of Dickens' works for instance, might speak of a "set of Dickens." It is not so easy to understand, if he were offering a single work, that he would speak of "a set of Bleak House." We should rather expect him to speak of a "copy of Bleak House," even though it might be bound up in two

volumes. The "Animal Kingdom" was, as we understand, a single work, although customarily bound up in two volumes, but which had been, and might again be, bound up in a single volume. We think that what the plaintiffs agreed to pay was 20 cents for each complete copy of the work. Under the arrangement between the plaintiffs and the defendant, the former was obliged to pay the stipulated sum before they had an opportunity to examine the sheet stock. As soon as they discovered the discrepancy between what they paid for and what they received they made a demand for the refund of the amount paid in excess of the agreement. This they are entitled to recover.

Judgment reversed, and new trial granted, with costs to appellants to abide the event.

Judgment reversed, and new trial granted, with costs to abide event. All concur.

(68 App. Div. 390.)
PRONK v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. January 30, 1902.)

1. PERSONAL INJURY—INSTRUCTION.
   Instruction that plaintiff may recover if "hurt" is sufficient to authorize recovery for mental pain as well as physical pain.

2. WITNESSES—FAILURE TO CALL—INFERENCE.
   Where plaintiff claims an injury to her nervous system, and defendant has shown by plaintiff that before the accident she visited certain physicians, and has introduced testimony of a person who accompanied her as to her demeanor, and statements made by the physicians, warranting an inference that long before the accident she was suffering from similar nervous impairment, and a finding that she was not physically normal, defendant's omission to call the physicians as witnesses, on the chance of plaintiff waiving her privilege as to their testifying, does not authorize an instruction that such omission requires an inference against defendant.

Appeal from trial term, Kings county.